If it may please the Court, Your Honor, my name is Fred Bloom and I represent the appellant in this matter, Texas Eastern Instruments. I'm sorry, Texas Eastern Overseas. If you get the client's name right. That's usually an important start, Your Honor. The appeal in this case has a multitude of issues and I want to try to narrow it unless the Court disagrees, but I want to start with the proportional share issue and then move on to the NCP and then, if there's time, deal with the interest calculations. Now, of course, if the Court doesn't like it, I will be happy to do whatever the Court wants, but absent that, I'd also like to reserve four minutes for rebuttal, please. The issue of the proportional share versus pro tanto share in terms of how settlements are calculated is one that this Court decided in the Exxon Valdez case when it said that the proportional share analysis is the law of the circuit. That case is consistent with the Supreme Court's decision in McDermott, with DIPTA in the Atlantic Research decision by the Supreme Court, and there is no good reason to deviate from that approach. The Court has never treated the issue of pro rata versus pro tanto as one of Court discretion. It has always looked at it as a matter of law, and there is, as actually Judge Carlton did in the district court below. Judge Carlton first ruled as a matter of law when it approved the settlements in question that the proportional share approach should apply, and even when he reversed himself, he did so as a matter of law and not one of the discretionary issues which Ameripride has put forward as their main argument. Okay. I'm looking at your brief. I think this is your brief. And you just said that Exxon Valdez case adopted UCFA as the interpretation of, I guess, circular allocation of liability. Is that what you're saying? No, Your Honor, I'm not. Exxon Valdez was not a circular case. Okay. So is that correct, that there is no case in the Ninth Circuit that adopts UCFA or UCACA as, for purposes of circular liability? In that sense, this is a case of first impression for this Court. But what I pointed out is when this Court spoke in the Exxon Valdez case, it was speaking in a broad sense that the proportional share approach is the law of the district. Then it was then that's also consistent with the Franklin decision. So we have specific cases that are looking either at other Federal statutes or Federal common law, but here we have a different statute. And the circuits have split, I guess, the First and the Seventh, as to whether it requires a certain approach or it leads it to the district court discretion. And that seems to be where we are as well. Right. There's actually a three-way split in the circuits, Your Honor. The Seventh says that the pro tanto approach applies. The First in the American Cyanamid said it's a discretionary act for the trial court. And the Tenth in the Tosco decision says it's the proportional approach. So in essence, you guys are talking. So we can do whatever we want. It's a tough question for the lawyer, Your Honor. But no, and actually, you know what, it's actually a pertinent question for this case. No, you can't. And it's the problem that we have with the lower court, that like Judge Carleton, you have this you certainly have some discretion on what you can do, but as the Supreme Court said in the recent CTS case, that discretion is basically confined by the Federal Court and the four corners of the statute. Well, let me ask you this, just to get the sequence of events. So back in 2007, the district court approved a settlement, right, with Ameripride, between Ameripride, Cal-Am, and Futamaki, and said I'm going to adopt the UCFA as the law of this case. How does that ruling apply four years later in 2011 when the court said basically I don't know what you're talking about? Would we say that that ruling in 2007 has bearing on the 2011 determination? And if so, why? Well, it certainly, I mean, it's not a binding decision. The court certainly has the theoretical power to change its mind. But, and this is a big but, when the court approved the settlements back in 2007, it did not hold any good-faith hearing. It did not take evidence on the good faith of the of the settlements. It did not look at whether it was fair to the non-settling parties because it says that was an issue that would be left to the trial. When the court then changed its mind just prior to the actual trial, it basically changed the rules of the game. It's, and it assumed that there was a fairness as it related to the settlement parties without holding any hearing on it, which is, if you go back again to the Franklin decision, which deals with a very similar statute here, it's not like we're dealing, it may be securities versus CERCLA, but it's a contribution statute with similar language. One of the things that the Court said was, if indeed you have to go with the pro tanto approach, you have to do this hearing. This hearing is the sin quanon of the pro tanto approach because it's the only way to ensure due process to settling parties. So when the Court changed its mind and went from proportional share to pro tanto, it did it without one of the basic safeguards of the pro tanto approach. So hadn't it done a hearing, because I think it made some determination that that was a fair settlement amount for the two parties? I guess that's Petrolay and Cromalloy. Was that not enough? I mean, was the, I think opposing counsel argues that, in effect, the Court was deciding that's their fair share of the liability. It did it, and when the case was before the Court in 2007, there was State court claims in which the Court made an analysis under the California State law of good faith settlement. And then there was the CERCLA case in which the Court not, could not apply the California analysis, but had to apply basically the analysis that this circuit has applied. The good faith settlement issue, and whether or not it was proportional, it was under the California statutes, the California claims, in which there had to be gross proportionality. That's a far cry from fairness to settling defendants. And what CERCLA requires, and what this Court talked about in the Franklin case, is that the settlements were fair to the settling defendants. And that requires much more than gross proportionality. And, in fact, it, the, the California good faith scheme has, does not give the protections that CERCLA and Federal common law require. It was basically, that's, is an apples-and-oranges comparison. So, so since we're talking about one contaminated area and all of the different RBs for that contaminated area, is, I was wondering whether the, the Court's determination statement that this is the law of the case, the UCFA, whether that law of the case ruling applied to a different case, which is the, the dispute between TEO and, and Ameriprise. It did, Your Honor, because if it looks at the two paragraphs within, there's two paragraphs that apply directly to this within the order. And the part where the Court talks about law in the case, it's talking about how the settlements will apply to non-settlement parties. And so these are, so TEO was the non, a non-settling party that was affected by that determination is, is your position. Correct. And we should have, the issue here, I know, is that this is an issue that, that is, that has implications far beyond the case that's just before us. But if you look, if you just look at it within the confines of our case, and forget about the other circular cases, the Court's change of position without going and, and without doing anything more, if indeed there's discretion within the Court, would constitute an abuse of discretion. Now, we believe it's a question of law, so that there is no discretion. But even if you get to the, basically the First Amendment, that is an abuse, would constitute an abuse of discretion. So let me see. So the, the Court did decide that whatever else is true, whatever is left, you two are equally responsible for, right? Correct. Right. And I take it what your position is then, if there was a foul-up in the settlements as such, then Ameripride has to bear the loss. That's what it amounts to, is that right? Well, either, Your Honor, it goes both ways. If they got a great settlement, they get the, they get the advantage. And that's the proportionality. It goes both ways, but either way. Yes, Your Honor. And you're, and you want, you want to give them the advantage, so you're arguing that side of it, too, right? But my point is, my point is, that is your basic position. Yes, Your Honor. If there was a foul-up and they should have gotten more money, a couple of them, they bear the loss. That's what it comes to. What it comes to, Your Honor, is if you just look at the arithmetic, the amount of the percentage that the settling defendants paid was 18 percent of the totals. And the remaining 82 percent was split between Ameripride and TEO. So the district court made no finding that their proportional share was 18 percent. No, this is just, this is just the math, Your Honor. Yeah. Okay. Yeah, I'm not suggesting that Judge Carlson did any, because he did not. But if you look at the 3.2 million, and you just, math is one of the reasons how bad I am is why I'm a lawyer. That's why we're all lawyers, yeah. But my paralegal, who's much better, tells me I'm right on this math. So what Judge Fernandez is suggesting, that is the effect of adopting the UCFA, is that if the party plaintiff guesses wrong about how much the settling defendants should pay, what their proportional share is, then they end up holding the bag. And the protonto is the opposite, which is that if the non-settling defendants pay too little, then it's the other, or the settling defendants pay too little, then the non-settling defendants end up holding the bag. Yes, Your Honor. In protonto. But there's, first it's, the issue, just to be, to hone in on what Judge Fernandez was talking about, is we believe that we should have had the ability to argue that the pie that TEO and Ameripri was going to split should have been smaller. It shouldn't have been 82 percent. It should have been much, much less. So does that go to your NCP response cost argument or to a different argument? That just defines, the NCP issue defines the size of the pie and helps, and then we're talking about how the pie is split. But I want to go back to what you talked about in terms of who bears the risk and everything like that. And that's a really critical issue here in terms of proportionality versus the protonto. And if you look what this Court ruled in Franklin, and if you look what the Supreme Court ruled in McDermott, both of those courts said that the decision to settle is solely within the power of the plaintiff, and that if the plaintiff doesn't think it's enough money, don't settle. And, but that becomes, this is one where CERCLA actually becomes more important than either the securities cases or the longshoremen cases, because the bedrock policy behind CERCLA, as the Supreme Court said in Atlantic Research and as this Court has said in a multitude of cases, is that the parties should share proportionally in the loss. That was specifically, and that was, and when you look at Atlantic Research and you look at that last part of dictum that we referred to, it quoted, I believe it was the restatement of torts as to how everything would be divided, and it quoted the exact section dealing with proportional versus protonto. So if you take a look and you, if you take a look at the issue within the confines of CERCLA requiring proportionality, the Ninth Circuit in Franklin and the Supreme Court in McDermott saying that it's the plaintiff that holds the keys in terms of how to deal with it, and that is this Court mandating the application of the protonto approach. And I would go back to the basic conclusions of Franklin and McDermott, that when you compare the two, when you look at the two side by side, and importantly, Ameriprise never argues that the protonto is better. They don't say it was a better way to do it. Well, they do point out that, and I think the Seventh Circuit or whichever the circuit was that adopted UCATA, the protonto approach, that 113F2 mandates that. Only in the instance of. So it's not totally contrary to CERCLA to apply that. I mean, that was the Seventh Circuit's reasoning. It is, Your Honor, but if I might. We argued the statutory construction that if indeed the CERCLA wanted Section 1 to be in Congress, it could have said so. But there is a huge difference which goes to the issues of equity when you look at a settlement by the Federal Government and one by a private party. And that was, and in one of them, and in the letter brief that we sent to you, we cited the court to the case of United States versus, I believe it's Cannon Engineering. And that talks about the multitude of layers of safeguards that are present when EPA settles a case that don't exist in a private transaction, that, and besides, this court is obligated to give an EPA settlement a large amount of deference because of those protections. The EPA is not deemed to be a party with a financial interest in the case where indeed the parties here are. And that's why when you deal with the EPA, you can use the pro tonso approach because equity is inherent within the government. When Congress said dealing with private parties, they said equitable factors. And I know my time, I'm almost out of time, but I want to go basically to the heart of the matter. At the end of the day, if you look at how the Court did it, and I want to be clear here, Judge Carlton, I've never seen a judge work harder in a case. But he worked hard and he made some good decisions. He also made some bad ones, which is just inherent in the process. What Judge Carlton did is without holding any evidentiary hearing that says the settlement was fair to the non-settling parties, simply used a subtraction equation which cannot be in any stretch of the imagination bound to be equitable as required under Section 113.1. And with that, I would reserve the rest of my time, Your Honor. All right. Good morning, and may it please the Court. I'm Phil Punsacker. I'm here to argue for Mayor Pryde today. First, I'd like to say that this Court should not limit the district court's ability to apply equitable factors to almost all of the issues that are being brought forth by TEO, where there's a statute that specifically says that the district court has the authority to allocate according to equitable factors that the district court deems appropriate. And organize the argument here in four main points. First, that Mayor Pryde proved TEO's joint liability under CERCLA and the NCP compliance and TEO's share. That's all that we're required to do for 113. And that flows from the releases of hazardous substances that happened at a facility that both TEO and Mayor Pryde operated that went into the groundwater and flowed all the way to the wells, the drinking water wells, that were operated by Cal-Am Water and Hudamaki. Well, what do we do about this decision that the district court made in 2007 where it approves the settlement and says, but we have to protect the non-settling defendants and so we'll adopt the UCFA? And then when TEO raises this and its motion to eliminate, the district court said, no, that's too hard. I'm not going to do that. Well, Your Honor, first of all, if you look at the UCFA itself, the language of the UCFA, it specifically says that it's determined in accordance, I'm looking at Section 6 now, it says it's specifically determined in accordance with Section 2 of the UCFA. So you're looking at Section 6 and Section 2. Section 2 says you allocate it by fault unless otherwise agreed by the parties. And here we had TEO before trial agreeing that it ought to be allocated dollar for dollar. We put in our briefs where that was. Well, I looked at those statements, and there's some random and loose language here and there, but I didn't see any waiver of the determination made by the district court. And, in fact, TEO vigorously argues that point before the district court. So I'm having trouble with that argument. Secondly, Your Honor, if you look at Section 2a)(b), and you look at that language and it's talking about allocation by fault, that is an imperfect match to CERCLA. It's not just fault that the district court allocates by equitable factors. So the district court had to allocate. It wouldn't just allocate by fault. And then, secondly, Your Honor, TEO argued at a motion in limine that it ought to be allowed to put on evidence of Cromwell-Loy's liability. Well, isn't that what the UCFA would require? So, in other words, as I understand it, under the UCFA, which the district court said it was adopting, it needed to determine the actual share of liability for all of the RPs. And then if Petroleum Cromwell-Loy's was more than the 18 percent that opposing counsel figured, then that amount, that entire amount, would be a credit for TEO, that they wouldn't be required to pay that. I mean, that's how the UCFA operates, good or bad. It protects the non-settling defendants, just like the district court said it wanted to do. But, Your Honor, what I'm saying here is there was a failure of proof on the part of TEO. It said it was going to prove up shares. It did not do that. The district court said, I won't hear that. The district court said, this is too hard. We can't have a mini-trial on these parties. That's over and done with. So just go forward. Well, actually, Your Honor, what the district court said was, you can put on evidence that excuses your liability in the form of evidence about Cromwell-Loy. That's just fine. You can put that on. But then it said, but it doesn't matter because I'm just going to subtract the settlement amount. I mean, that's what it said in the transcript. So it's sort of like, yeah, you can do what you want, but it's not going to make any difference to the bottom line. And then what? My attitude towards that is, no, you can prove anything you want about other people's liability. And to the extent you demonstrate somebody else is liable, that excuses your liability. But that liability of third persons in terms of dollars is measured by the settlement that the court found fair and reasonable. So if I'm interpreting that right, it said, I don't care what evidence you put on. We'll subtract the $3.25 million, and that's all you get. My point is that to preserve error, they needed to put on the evidence. They didn't do that. They put on some evidence in the form of interrogatory answers from us. That's all they put on. So we would argue, Your Honor, that there was, in addition to other arguments that we've made, that there was a failure of proof on the part of TEO to prove that somebody else's liability excused theirs. Your Honor, there are undisputed facts here that establish that TEO is responsible for the replacement water costs that we paid in settlement to Cal-Am and Hudimaki. Those undisputed facts can be found in the final pretrial order, which starts in the excerpts of record at 750, and in the court summary judgment ruling at excerpts of record 47. Specifically, the court found that TEO was liable under CERCLA section 107. They've argued in their reply brief that it didn't happen. It did happen, and it's clear from what the district court did below. When you look at CERCLA for a response action, you look at what is defined as part of a response action, CERCLA section 101. The definition of response action includes the provision of alternative water supplies. It's clear here that alternative water supplies, as defined in CERCLA, include provision of drinking water. I thought the court said it wasn't going to inquire into that. That it didn't think that for the settlement amount it needed to look at whether it met NCP consistency. Your Honor, it did say that for the settlement amount, but our point is that when you look at what the NCP requires for the two of them. So you're saying had the district court looked at it, so there wasn't, even if that was an error, it was harmless because, in fact, the settlement costs were consistent with the NCP? Is that your argument? No, Your Honor. What our argument is, and we made this argument to the district court and the district court accepted it, was that there's one NCP compliance for a response action. That's what the NCP says. If you look at 40 CFR 300.700, lowercase c, 3, little i, it specifically says response costs are considered consistent with the NCP if the action, when evaluated as a whole, is in substantial compliance with it. So the action here was the cleanup that was being administered by the regional board. That's what the district court looked at. That's what it determined was NCP compliant. And so we say that umbrella covers everything, including the settlements. There's no need. So if the settlement was for consequential economic loss to the other parties, to Cal-Am, I forgot who they settled with, yeah, Cal-Am and Futamaki, if that was for consequential economic loss, which clearly is not covered by CERCLA, you're saying that would nevertheless be substantially consistent with the NCP? Absolutely not, Your Honor. And the reason I'm not saying that is because we know that these settlement payments, in this case, were payment for replacement water for three reasons. Well, then you're saying it's, okay, so, I mean, we've got two possibilities here. Either the district court, I understood the district court to say, I don't have to look at whether a settlement is consistent, the costs of the settlement are consistent with the NCP. That's what I understood the district court to do. Then you could say, well, in fact, here, the settlement amounts were consistent with the NCP. Or you could say, which I think is what you're saying to me now, is that right? Your Honor, if you look at the excerpts of records at 748, it's where we were having a discussion on motions in limine on December 16th, 2011. And we were arguing this point, the same point in the district court. And basically, I said the same thing to the district court that I'm saying to you now at lines three through nine. And the district court said, I'm really satisfied that that's correct. So the district court agreed that it was, that NCP compliance was for the response action, which was, which is the control of the cleanup by the regional board that we were, we were undertaking under the direction of the regional board. So your view is that the district court, in effect, said all of the work done for which the settlement amount was paid is consistent with the NCP? In effect, yes. Okay. I understand that now. Thank you. Yes. And in addition, your Honor, the district court did determine that the amounts we paid were for replacement water, as did the regional board when it absolved us of our obligation to provide replacement water. And TEO, the expert admitted that those costs, quote, are for replacing lost groundwater supplies due to the detection of PCE and production wells near the site, as in the supplemental excerpt of records at 227. So it's, we paid the money for replacement water. You can look at the settlement agreement with Udemaki specifically, and there's all kinds of mechanisms in there for how they're taking over our requirement to provide replacement water. The facts are that's what the money was paid for. The next thing I'd like to talk about, your Honor, is that the district court used an interest calculation in its equitable allocation under CERCLA to roughly address the fact that Mayor Pride had paid all of the costs, all $18 million. And the district court lays that out in the opinion on how it's, how the district court is doing the allocation. And it directed us to try to quantify that number using an interest calculation. It's our view, your Honor, that that was perfectly appropriate under allocation principles and agreed upon by the Ninth Circuit and authorized by Section 113F. It's trying to figure out how to do the math, as my third grade teacher, Mrs. Joe, said. You know, he did the math. He could have said $9 million and it's this and this based on these factors, but he showed the math. And we think that's perfectly okay. If this Court were to somehow disagree about that, then you would then, as T.U. has argued, then you would look at the language of 107 on interest. And we believe that the better rule for when that starts to run is when the complaint is filed. And it's about a $33,000 difference between what the court did in its equitable allocation and, you know, and what it would be as the complaint is filed. There's a stipulation that the parties agreed to that's in the record that kind of lays all this out because we knew this was a dispute. Fourth, Your Honor, the district court correctly ordered the assignment. And it was correct. This is a matter of law question, no doubt about it at all. Consistent with the language of the statute and consistent with California's Supreme Court authority and the policy in favor of enforcement of judgments in this state. If you look at the language of the statute, California Code of Civil Procedures 708.510, we rely on the language in that statute which says whether or not the right is conditioned on future developments. That's the key language from our perspective. They say the key word is payment. And they argue that for an insurance policy, a right under an insurance policy is not a right to payment. And we say that can't be right, Your Honor. That can't be right because insurance policies say we will pay. And to get them to pay under any insurance policy, you have to prove it. Those are conditioned on future developments, just like the statute says. The Essex case, the California Supreme Court decision outlined the basic law on this, Your Honors, and it basically said that essentially anything is assignable unless it's of a personal nature, it lists the things that are of a personal nature, and this doesn't qualify. So the court had broad authority to order the assignment in support of the judgment, and we think it should be upheld for those reasons. The TO has also argued that the payments that we recovered from them are somehow results in a double recovery under CERCLA. That can't be correct either, Your Honor. And the reason is if you look at the language of the statute, which deals with double recovery, it's CERCLA Section 114B. It says that there be no double recovery. And here I'm essentially what it says, and I'm quoting the language of the statute. Or the same removal costs or damages or claims. Here we paid $18 million. The district court took the credit for the settlement payments and allocated the $15 or so million. There's no double recovery here. It can't be a double recovery. We're not getting the same response, the same money back that was paid. So we believe that except for the assignment, every claimed error should fall within the district court's wide and broad discretion to allocate under Section 113, and that the district court did not abuse its discretion in the allocation and should be affirmed. And as to the assignment, the district court should be affirmed because the district court correctly ordered the assignment consistent with the language of the statute, case law, and public policies in favor of enforcing the judgment. And that's my argument today. Unless the court has further questions, I'm happy to answer any questions within my remaining time. Thank you. Roberts. Excuse me. Since I have so little time, I want to make one comment on the interest issue and then move on to the NCP issue. The issue on the interest issue is where there is a statutory mandate, equity cannot preempt Congress, basically. But the statutory mandate is in 107, and this was a payment of interest under 113. It deals with a judgment under CERCLA, and that's how it's been interpreted. And in terms of notice, as a matter of law, we could not have had notice until July of 2010 because we didn't exist. In a sense, we were a dead body that was resurrected. So we couldn't have notice until then. On the issue of the NCP, the bottom line is, is that this begins and ends within the language of the statute. Could you just respond to opposing counsel's point that the district court in effect ruled that the settlement amount was consistent with the NCP? Do you agree with that? It's, in terms of the 113 issues, no, it did not. And that's actually. How do I know that? Because he's pointing to language in the transcript, and that's the only thing I have before me here. If you go to the summary judgment motion was filed solely under 107, and it sought to have all the damages, all the response costs, including the $10 million that was paid to Hudimaki and Cal-Am, declared to be owing to them as a result of a 107 claim. The district court then ruled that the settlement amounts, that $10 million, could not be recovered under 107 and had to be filed under 113. Then the court went to look at the amounts that were being claimed under the 107 part. And yet, for those issues, the court then said, I find that they were NCP compliant. But the court never even looked at the $10 million. But what about its ruling, which opposing counsel is pointing to? I take it this is a transcript on the motion in Lemon A. No, it would be the summary judgment transcript. Well, right. But they were pointing, I thought, to the December 16th, 2011, where it denies your NCP motion. It says, Compliance with NCP denied, although the court will reduce the plaintiff's damages by any amounts received from settling defendants. Your Honor. I'm sorry. So it says. Okay. So the court says it was resolved in summary judgment. So they're making, the court's making a mistake in saying that the NCP compliance of the settlement was resolved on summary judgment. Is that right? Yes, Your Honor. The court's making a mistake, and the court's statement there is actually even inconsistent with the summary judgment ruling, where on page 41 of our brief, we cite to that language where the court consistent with the law, not only in the Ninth Circuit, but every circuit says, when you're dealing with NCP compliance, each particular cost has to be compliant. It's not an all-or-nothing situation, because some costs may be compliant, some costs may not be. In this case, those costs that were directly paid by Ameripride, the costs where they paid it out directly, were NCP compliant, and we didn't argue with that. But the cost in which they saw it under reimbursement under 113, now, it, there was no evidence that there was NCP compliance, because the court said it didn't have to be compliant. Now, it may be compliant. We don't know that, because that issue never went before the court. But the court couldn't, couldn't allow a 113 recovery without a finding that the would be NCP compliant. And this is, would be the last statement that I would make. When you go back to the statute, the statute says you can get a 113 recovery against parties that are liable under 106 or 107. If Hudimaki's, if Hudimaki went, tried to sue TEO directly, unless Hudimaki could have shown that its costs were NCP compliant, it could not have got a judgment under 107 against TEO. And without a finding that they could have, we can't be joint torchfeasors, which is the bedrock assumption under a contribution action. All right. The case of Ameripride Services versus Texas Eastern Overseas is submitted, and we're adjourned for this hearing.
judges: Albritton, Fernandez, Ikuta